CLARKSON, J., dissents.
This is a proceeding for compensation under the provisions of the North Carolina Workmen's Compensation Act, for an injury suffered by the claimant, Press Swink, while he was employed by the defendant Carolina Asbestos Company, at its plant at Davidson, N.C. The other defendants were insurance carriers for the defendant Carolina Asbestos Company, from time to time, while the claimant was in its employment.
The proceeding was begun before the North Carolina Industrial Commission, and was first heard by Commissioner Dorsett, who, on his finding that the claimant "did not sustain an injury by accident which arose out of and in the course of his employment," denied compensation.
On claimant's appeal from the award of Commissioner Dorsett, the Full Commission heard the proceeding, found the facts, and, in accordance with its conclusions of law, affirmed the award of Commissioner Dorsett denying compensation.
The facts found by the Full Commission, as set out in the record, are as follows:
"1. Both the claimant, Press Swink, as employee, and the defendant Carolina Asbestos Company, as employer, are subject to the provisions of the North Carolina Workmen's Compensation Act, the defendant having in its employment more than five employees who were engaged in the same work as that in which the claimant was engaged, within the State of North Carolina. Both had voluntarily accepted the provisions of said act. The average weekly wage of the claimant was $16.86. *Page 305 
"2. The defendant Maryland Casualty Company was the insurance carrier for the defendant employer from 1 July, 1929, up to and including 9 July, 1934.
"The defendant United States Casualty Company was the insurance carrier for the defendant employer from 10 July, 1934, up to and including 1 August, 1934.
"The defendant Lumber Mutual Casualty Company was the insurance carrier for the defendant employer from 1 August, 1934, up to and including the date of the hearing of this proceeding.
"3. At the instance of the insurance carrier on the risk of the defendant employer at that date, on 23 August, 1934, the defendant employer caused a physical examination of the claimant to be made. As the result of this examination, and because of his physical condition as disclosed thereby, the claimant was discharged from its employment by the defendant employer on 25 October, 1934. The claimant had been in the employment of the defendant employer for six or seven years prior to the date of his discharge. During that time he had worked continuously and had earned and received his wages regularly. He had lost no time or wages on account of the disease with which the examination showed he was suffering at the time of his discharge, except that for one week about a year before his discharge he was unable to work, complaining at that time of the same symptoms as those of which he is now complaining.
"At the time claimant entered the employment of the defendant Carolina Asbestos Company, at its plant at Davidson, N.C. he was in good health. He had been employed prior to that time in a cotton mill at Newton, N.C. At the time of his discharge, he was suffering from a disease which is medically defined as pulmonary asbestosis. He was then about 36 years of age. His condition, as shown by an X-ray examination made on 26 November, 1934, was as follows:
"He was suffering from shortness of breath, weakness and coughing, without raising sputum to a great amount. He complained of weak spells. His weight ten or twelve years ago was 172 pounds; it is now 157 pounds. He first began to notice his condition between one and two years prior to the date of the hearing of the proceeding. He was unable to chop wood, except for a few minutes, without exhaustion.
"The physical examination showed that his chest expansion was poor, but was more limited at both bases. Fine, dry cracklings or rattles were heard throughout both lungs, at both bases. The lower two-thirds showed slight dullness to percussion at both bases, but there were no murmurs. The rate was 94. The heart was slightly enlarged to percussion. He had a rather marked clubbing of his fingers. There was no evidence of tuberculosis. The X-ray examination indicated a fibrosis that *Page 306 
existed throughout both chests. The fibrosis was medically defined as a proliferation of certain tissue in response to irritation or stimulation from chemical irritants or mechanical irritation. The fibrosis found in claimant's chest was diffused, generalized, and on both sides, but most marked at the lower half of the chest, in the right and left lobar area. The lung has three lobes, one on the right side and two on the left side. The shadows indicated on the X-ray were described in the medical testimony as hilum shadows, and were more than normal. The white, hard bodies indicated by the shadows were called calcified lymph nodes. Claimant's chest flared in the lower segment and continued to contract in the areas in the region of the eighth and ninth ribs, and in the axillary ribs. The heart shadows from the X-ray showed a rather marked enlargement of the heart on the right side. It was slightly enlarged on the left side. The diaphragm of the claimant was high in the left dome, and was out of proportion in height as compared with its normal position. The condition found in claimant's lungs, when he was examined in November, 1934, in the opinion of the medical examiners, had existed for more than a year prior to the date of the examination, and such is found to be the fact by the Commission.
"4. Prior to his discharge on 25 October, 1934, the claimant had been employed by the defendant Carolina Asbestos Company, in its plant at Davidson, N.C. for six or seven years. He had worked most of the time in the carding room in the plant. Prior to 19 December, 1933, the defendant had failed to install in its plant a dust removal system, such as was in general use in plants similar to defendant's plant. If defendant had installed and maintained in its plant such a dust removal system, during the time the claimant was in its employment, a very large per cent, but not all, of the dust incident to the operation of the plant would have been removed. On 19 December, 1933, the defendant employer did install in its plant a dust removal system of the type which was in general and approved use and from the time of the installation of said dust removal system up until the date of the discharge of the claimant, the defendant employer continued to use the said dust removal system in the said plant in a manner free from fault upon its part, and in accordance with the methods for which it was designed to be used. After the installation of the dust removal system in defendant's plant on 19 December, 1933, the dust in said plant was reduced as much as 90 per cent.
"5. The condition of pulmonary asbestosis found in claimant's lungs was caused by the inhalation of asbestos dust while he was working in defendant's plant, as its employee. Such condition began at the time the claimant was first employed in said plant, and continued to accumulate gradually during the years of his employment up until the date of the installation of the dust removal system by the defendant on *Page 307 
19 December, 1933. To what extent, if any, the said disease accumulated after 19 December, 1933, it is impossible for the Commission to determine. It is found as a fact by the Commission that in plants in which dust removal systems are in general and approved use, and in which such appliances are properly used, certain employees have become afflicted with asbestosis from the inhalation of asbestos dust in such plants. No dust counts were taken in the plant of the defendant at any time.
"6. On 22 November, 1934, the defendant Carolina Asbestos Company, as an employer, reported to the North Carolina Industrial Commission that one of its employees, Press Swink, had filed a claim with the Commission under date of November, 1934, alleging that his injury was caused by the negligence of the defendant employer, in that it maintained no dust removal system in its plant, such as is approved and in general use in other asbestos plants, said notice being under date of 8 November, 1934.
"On 26 November, 1934, the Industrial Commission received from the defendant, as the employer of the claimant, the report of an accident, on Form No. 19, giving the name of its injured employee as Press Swink. The response to question 28, included in said form, requesting a description of the accident and a statement as to how it occurred, was as follows:
"`Unknown; the party has filed claim with the North Carolina Industrial Commission under date of November, 1934, alleging that the accident which resulted in his injury was caused by the negligence of the employer in that it maintained no dusting or suction system in its plant, such as is approved and in general use in other asbestos plants.'
"Under date of November, 1934, the claimant filed notice of claim for compensation under the provisions of the North Carolina Workmen's Compensation Act. In this notice the claimant advised defendant employer that within the last twelve months he was injured by accident while in its employment, caused by the negligence of the defendant employer in that it maintained no dust removal or suction system in its plant, such as is approved and in general use in other asbestos plants, and in said notice claimant stated that he was suffering from pulmonary asbestosis. No notice had been filed by the claimant with his employer, or with the Industrial Commission, other than the notice above recited. No report of the accident by the employer to the North Carolina Industrial Commission was made other than that hereinbefore recited.
"7. It is found as a fact by the Commission that claimant's pulmonary asbestosis was caused by the inhalation of fine particles of asbestos while he was at work in the plant of the defendant employer, and that said disease arose out of and in the course of claimant's employment. *Page 308 
"It is further found as a fact that said disease was not caused by an accident which occurred in the past, but was produced by the conditions in the plant, which were continuous therein from the time of claimant's employment until the installation of the dust removal system on 19 December, 1933.
"It is further found as a fact that the failure of the defendant employer to install a dust removal system in approved and general use in said plant prior to 19 December, 1933, was a failure to exercise such reasonable care for the safety of the employees in said plant as should have been exercised by a reasonably prudent man under the same circumstances, and that the failure of the defendant employer to install and operate such dust removal system greatly increased the dust hazard in said plant and the dust content of the air therein during the operation of said plant, and that the dust in said plant would have been eliminated 90 per cent by the use of a proper dust removal system during the said time.
"8. The findings of fact by Commissioner Dorsett, except those that may be inconsistent with these findings, are approved and hereby made the findings of fact of the Full Commission, in addition to the findings of fact herein made."
On the foregoing findings of fact, the Industrial Commission concluded "as a matter of law that the claimant was not injured by accident which arose out of and in the course of his employment, and that the disease of pulmonary asbestosis, from which the claimant was suffering at the time of his discharge by the defendant, did not result naturally and unavoidably from an accident, as required in order to be compensable by section 2 (f) of the North Carolina Workmen's Compensation Act."
In accordance with its findings of fact and its conclusions of law, the North Carolina Industrial Commission made an award denying compensation and dismissing the proceeding.
The claimant appealed from the award of the Industrial Commission to the Superior Court of Mecklenburg County, and on said appeal relied on his exceptions set out in the record as follows:
"1. To that portion of finding of fact No. 4 which is as follows:
"`On 19 December, 1933, the defendant employer did install in its plant a dust removal system of the type which was in general and approved use, and from the time of the installation of said dust removal system up until the date of the discharge of the claimant, the defendant employer continued to use said dust removal system in its plant in a manner free from fault on its part, and in accordance with the methods for which it was designed to be used.' *Page 309 
"2. To that portion of finding of fact No. 5 which is as follows:
"`It is found as a fact by the Commission that in plants in which such appliances are properly used certain employees have been afflicted with asbestosis from the inhalation of asbestos dust in such plants.'
"3. To that portion of finding of fact No. 7 which is as follows:
"`It is further found as a fact that said disease was not caused by an accident which occurred at the plant.'
"4. To so much of the findings of fact made by Commissioner Dorsett as were approved and adopted by the Full Commission, and are subject to exceptions 1, 2, and 3.
"5. To the findings of fact made by Commissioner Dorsett and by the Full Commission, and to the conclusions of law and to the judgment and award of the Full Commission, on the ground that the findings of fact above set out are not supported by competent evidence of sufficient probative force, and are contrary to law and facts.
"The plaintiff particularly excepts upon the ground that said findings of fact and conclusions of law, and the signing of the judgment and award, are in violation of the rights of the plaintiff under the Fifth Amendment, and under section 1 of the Fourteenth Amendment to the Constitution of the United States, and under section 35 of Article I of the Constitution of the State of North Carolina."
At the hearing of said appeal, judgment was rendered as follows:
"This cause coming on to be heard before the undersigned judge holding the regular September Term, 1935, of the Superior Court of Mecklenburg County, upon the exceptions of the plaintiff to the findings and judgment of the North Carolina Industrial Commission, rendered and filed herein, and the same being heard upon said exceptions, findings, and judgment, in consideration thereof;
"It is adjudged that the plaintiff's exception No. 3 be and it is now sustained and allowed; that his exceptions Nos. 1 and 2 be and they are now overruled and denied, and that his exception No. 4, in so far as it relates to the subject matter of his exception No. 3 is sustained and allowed, and the same is overruled and denied in so far as it relates to the subject matter of his exceptions Nos. 1 and 2.
"Thereupon, after considering the arguments and briefs of counsel representing the several parties herein, and upon due and careful consideration of the evidence, record, findings, and judgment of the said North Carolina Industrial Commission, it appearing to the court:
"1. That the plaintiff sustained a personal injury by accident arising out of and in the course of his employment, as the direct and proximate result of the employer's negligence;
"2. That accident occurred and said injury arose prior to the installation by the said employer of its dust removal system on 19 December, 1933; *Page 310 
"3. That as the proximate result of such accident and injury the plaintiff's disability arose and became compensable at the date of his discharge, 24 October, 1934;
"4. That the plaintiff's cause of action accrued when his disability arose, and is, therefore, not barred by the statute of limitations;
"5. That the said accident and injury did not occur, and the said injury was not accelerated subsequent to 19 December, 1933;
"It is, therefore, considered and adjudged by the court:
"(a) That the motions for dismissal filed herein by the United States Casualty Company and Lumber Casualty Company be and the same are now allowed, and this action or proceeding is dismissed as to them;
"(b) That the judgment and award of the North Carolina Industrial Commission rendered and filed herein be and it is now reversed and overruled, and the said Commission is authorized, empowered, and directed to award, in accordance with this judgment, the amount of compensation the plaintiff may be entitled to receive, as provided by statute, in such case made and provided.
"It is further adjudged that the Maryland Casualty Company pay the costs of this action or proceeding, to be taxed by the clerk."
From this judgment the defendants Carolina Asbestos Company and Maryland Casualty Company appealed to the Supreme Court, assigning as error the rulings of the judge of the Superior Court on plaintiff's exceptions on his appeal to said court, and the judgment reversing the award of the North Carolina Industrial Commission in this proceeding.
In Greer v. Laundry, 202 N.C. 729, 164 S.E. 116, it is said:
"It is provided in the North Carolina Workmen's Compensation Act that either party to a proceeding begun and prosecuted before the North Carolina Industrial Commission for compensation under the provisions of the act, may appeal from the decision of said Commission to the Superior Court of the county in which the accident happened, for errors of law, under the same terms and conditions as govern appeals in ordinary civil actions. N.C. Code of 1931, sec. 8081 (ppp), sec. 60, ch. 120, Public Laws 1929. *Page 311 
"It is further provided in said act that an award made by the North Carolina Industrial Commission in a proceeding begun and prosecuted before said Commission for compensation shall be conclusive and binding as to all questions of fact. It has accordingly been held by this Court that only questions of law involved in an award made by the Commission in a proceeding of which the Commission has jurisdiction may be considered and passed upon by the judge of the Superior Court on an appeal to said court from an award made by the North Carolina Industrial Commission."
In the instant case, the judge of the Superior Court was bound by the findings of fact made by the Industrial Commission, provided, such findings of fact were supported by competent evidence. Holmes v. Brown Co.,207 N.C. 785, 178 S.E. 569; Winberry v. Farley Stores, 204 N.C. 79,167 S.E. 475; Webb v. Tomlinson, 202 N.C. 860, 164 S.E. 860; Parrish v.Armour Co., 200 N.C. 654, 158 S.E. 188; Rice v. Panel Co., 199 N.C. 154,154 S.E. 69.
At the hearing of this proceeding there was evidence tending to support the finding of fact made by the North Carolina Industrial Commission that the disease from which the plaintiff was suffering at the date of his discharge by the defendant Carolina Asbestos Company from its employment, was not caused by an accident which occurred at defendant's plant, while the plaintiff was at work in said plant, as an employee of the defendant. For that reason there was error in the ruling of the judge of the Superior Court at the hearing of plaintiff's appeal to said court sustaining plaintiff's exception to the said finding of fact by the Commission.
On said finding of fact, the award of the North Carolina Industrial Commission, denying compensation, should have been affirmed by the judge. There is error in the judgment reversing the award, and remanding the proceeding to the North Carolina Industrial Commission for further action by the Commission in accordance with the judgment of the Superior Court. See Greer v. Laundry Co., supra.
On his appeal to this Court, the plaintiff relies on McNeeley v.Carolina Asbestos Company, 206 N.C. 568, 174 S.E. 509. An examination of the opinion in that case will show that the instant case is not governed by the decision in that case. In the opinion in that case it is said that the evidence at the trial showed that the plaintiff was not injured by an occupational disease, but was injured by the negligence of the defendant. It was held that the negligence alleged in the complaint, and shown by the evidence at the trial, was an accident within the meaning of the North Carolina Workmen's Compensation Act, and that therefore the plaintiff's injury was compensable under the *Page 312 
provisions of the North Carolina Workmen's Compensation Act. For that reason the judgment dismissing the action was affirmed.
In the instant case, the Industrial Commission has found that the plaintiff was not injured by the negligence of the defendant, but that his injury was caused by a disease which he contracted while working in defendant's plant as its employee. All the evidence showed that plaintiff's injury was the result of an occupational disease, and for that reason was not compensable under the provisions of the North Carolina Workmen's Compensation Act. It is otherwise since the amendment to the act by the General Assembly at its session in 1935. See chapter 123, Public Laws of N.C. 1935.
As the plaintiff is not entitled to compensation for his injury resulting from the disease which he contracted while in the employment of the defendant Carolina Asbestos Company, we have not considered the contentions of the insurance carriers for the defendant as to their respective liability for such compensation.
This proceeding is remanded to the Superior Court of Mecklenburg County, that judgment may be entered in said court affirming the award of the North Carolina Industrial Commission, denying compensation.
Reversed.
CLARKSON, J., dissents.