TERRY CECIL WAGGONER AND WILLIAM COMPTON SCOGGINS, III, PETITIONERS v. NORTH CAROLINA BOARD OF ALCOHOLIC CONTROL, RESPONDENT

No. 7010SC31

(Filed 6 May 1970)

**1. Intoxicating Liquor § 2— denial of on-premise beer permit — sufficiency of evidence**

In this proceeding upon an application for an on-premise beer permit, there was no competent evidence to support the ABC Board's denial of the permit because "of the number of citizens in the community opposing the issuance of the permit, in view of the traffic hazard in the area, and in the interest of the Governor's highway safety program."

**2. Intoxicating Liquor § 2— denial of beer permit — review in superior court — authority of court to order ABC Board to issue permit**

Upon appeal to the superior court from the ABC Board's denial of an on-premise beer permit, the superior court was without authority to order the ABC Board to issue the permit to petitioners, since G.S. 18-129 gives the Board the sole power, in its discretion, to determine the fitness and qualifications of an applicant.

APPEAL from *Bailey, J.,* 15 September 1969 Session of WAKE Superior Court.

*Robert Morgan, Attorney General, and Christine Y. Denson, Staff Attorney, for the respondent appellant.*

*Raymer, Lewis and Eisele, by Douglas D. Eisele, for petitioner appellees.*

HEDRICK, J.

William Compton Scoggins, III, and Terry Cecil Waggoner (petitioners), trading as The Lantern, applied to the North Carolina Board of Alcoholic Control for an on-premise beer permit on 17 March 1969. On 21 May 1969 the Board, by letter, notified the petitioners that their application had been disapproved because of expressed opposition by several members of the community to the issuance of the permit. The petitioners applied for a hearing and on 30 June 1969 a hearing was held in Raleigh, North Carolina, before D. L. Pickard, Assistant Director and Hearing Officer of the North Carolina Board of Alcoholic Control.

At the hearing the petitioners appeared and were represented by counsel. The evidence at the hearing was as follows: H. G. Brown, an A.B.C. officer, testified that he was sent an application for an on-premise beer permit by the petitioners and that he investigated the application. The building which the petitioners intended to use had previously been operated as a grocery store and was located on U. S. Highway 21 approximately 62 feet North of where this highway intersects with North Carolina Highway 115. Besides The Lantern, two other buildings close by are used for business, one being a drive-in restaurant and the other being a Shell service station. Mr. Brown testified that there was more than two hundred and fifty feet of visibility in either direction from The Lantern on U. S. 21 and that although the area surrounding the location of The Lantern is thickly populated, U. S. 21 is a divided highway and that the area is not congested. Robert W. Combs, pastor of the Vanderburg United Methodist Church, testified that he talked with many of the people in the community and that he felt that the majority of them were opposed to the granting of a beer permit to The Lantern and that he felt the establishment of The Lantern in this area would increase an already bad traffic hazard. Reverend Combs testified that he knew Interstate 77 was in the process of being constructed and that when completed it would bypass the entire community involved in this

proceeding and that it would take the traffic from Statesville to Charlotte that now uses highways 21 and 115. Reverend Combs further testified that he knew of no traffic accidents which had occurred recently at that intersection and that he did not know when the last accident had occurred at that intersection. T. E. Carriker, Jr., testified that a school bus stopped at the intersection where Vick's Restaurant and The Lantern are located and that the intersection is congested at certain times of the day. He stated that the traffic congestion presents a hazard for the fire department of the community but that the recent addition of traffic islands at the intersection has greatly improved the situation. He testified that people often drive up this highway the wrong way and that these conditions had existed at the time the building now proposed to be used for The Lantern was being operated as a grocery store, and that many wrecks had occurred while the grocery store was in operation. Mr. Carriker was unable to state when the last accident occurred at this intersection other than to state that it was "several months ago." Terry Cecil Waggoner, one of the petitioners, testified that there is good visibility for approximately five hundred feet North along U. S. 21 from the site where they propose to operate The Lantern and for approximately two thousand feet South of the site. Traffic islands have been installed and are located in such a manner as to separate the property of The Lantern from adjoining property and there is parking space for one hundred and eighty feet beside the building. Mr. Pickard, in his recommendation to the Board, stated:

"From material, credible and believable evidence, it is found as a fact that Terry Cecil Waggoner and William Compton Scoggins, III are suitable persons to hold a malt beverage on-premise beer permit. From material, credible and believable evidence, it is found as a fact that The Lantern, Route 4, Mooresville, N. C., is a proper place and location for a malt beverage on-premise beer permit. It is further found as a fact that the investigation of this permit did not reveal that a traffic hazard existed at the location of The Lantern at the time of the investigation. That the probability of a traffic hazard existing after the issuance of any permit to sell beer at this location would be entirely speculative."

Mr. Pickard then recommended that the on-premise beer permit be issued to the petitioners.

At its meeting on 18 August 1969 the State Board of Alcoholic Control reviewed the application of the petitioners and disapproved it and denied the permit because ". . . of the number of citizens

in the community opposing the issuance of the permit, in view of the traffic hazard in the area, and in the interest of the Governor's highway safety program."

Pursuant to the provisions of G.S. 143-306 et seq., the petitioners filed a petition for review by the Superior Court of Wake County. Judge Bailey reviewed the record and entered judgment declaring:

"2. Evidence of the opposition of citizens in the community to the issuance of the permit was hearsay in nature and was incompetent for the purposes for which it was presented, all of which was timely objected to by the petitioners at the hearing.

\*      \*      \*

"4. The conclusion of the Board that there is a traffic hazard in the area is unsupported by competent, material and substantial evidence in view of the entire record as submitted.

\*      \*      \*

"6. The order of the Board recites that its decision is based partly 'in the interest of the Governor's Highway Safety Program,' which basis is not one of the provisions set forth in General Statute 18-136 for which an application may be denied; this ground recited by the Board is therefore legally untenable.

"7. The Board's decision to deny the application partly in the interest of the Governor's Highway Safety Program is unsupported by competent, material and substantial evidence in view of the entire record as submitted, there being absolutely no evidence in the record as to what the Governor's Highway Safety Program is or how it affects the petitioners in this cause.

"For the foregoing reasons, it is now ordered, adjudged and decreed that the order of the Board of Alcoholic Control entered on August 18, 1969, denying a retail on-premise beer permit to the petitioners in this cause, be and it is hereby reversed.

"It is further ordered, adjudged and decreed that a copy of this order issue to the North Carolina Board of Alcoholic Control with directions to issue the permit to the petitioners as requested in the application which is the subject of this cause."

From the judgment of the Superior Court the Board of Alcoholic Control appealed.

Under the provisions of G.S. 18-129 the State Board of Alcoholic Control is given the ". . . sole power, in its discretion, to determine the fitness and qualifications of an applicant for a permit to sell, . . . beer or wine." By G.S. 18-136 the Board may refuse to issue a new permit if, in its discretion, it is of the opinion that the appli-

cant is not a suitable person to hold the permit, or that the place occupied is not a suitable place. G.S. 143-315 provides that the Superior Court of Wake County, on review, has the power to affirm, reverse, modify or remand decisions of administrative agencies ". . . if the substantial rights of the petitioners may have been prejudiced because the administrative findings, inferences, conclusions, or decisions are: . . . Unsupported by competent, material, and substantial evidence in view of the entire record as submitted."

The functions of the Superior Court, which acts as a reviewing court in an administrative law action, are set out in *Bailey v. Dept. of Mental Health,* 272 N.C. 680, 159 S.E. 2d 28 (1968), by Branch, J., as follows:

> " 'In passing upon an appeal from an award of the Industrial Commission, the reviewing court is limited in its inquiry to two questions of law, namely: (1) Whether or not there was any competent evidence before the Commission to support its findings of fact; and (2) whether or not the findings of fact of the Commission justify its legal conclusions and decision. 58 Am. Jur., Workmen's Compensation, section 530.' "

[1]     There was no competent evidence in the present case which would support the Board's action in denying the permit to the petitioners. The evidence presented at the hearing was that The Lantern was to be located on a divided highway, in a forty-five mile per hour speed zone and in an area where other businesses already were established. None of the grounds given by the Board in reaching its conclusion that the permit should be denied are supported by competent, material or substantial evidence. In fact, the findings of fact made by the hearing officer, and adopted by the Board, are to the effect that no traffic hazard was shown. There is no basis for the denial of a permit for the on-premise sale of beer because people have expressed opposition or because of the "Governor's Highway Safety Program." The conclusion reached by the Board is not supported by the facts; therefore, Judge Bailey was correct in reversing the action of the Board.

[2]     The Superior Court, however, was without power to order the North Carolina Board of Alcoholic Control to issue the permit to the petitioners. The statute, G.S. 18-129, gives to the Board the ". . . sole power, in its discretion, to determine the fitness and qualifications of an applicant. . . ." The Board must, of course, exercise that discretion in accordance with law, and the order of the Superior Court should have so provided.

For the reasons stated, the judgment of the court below reversing the Board is affirmed and the cause is remanded for the entry of an order directing that the Board of Alcoholic Control enter a decision consistent with the principles set forth herein.

Modified, affirmed and remanded.

CAMPBELL and PARKER, JJ., concur.